## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RANDY WALTZ, on behalf of himself and similarly situated employees,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 4:16-cv-00469** |
| **AVEDA TRANSPORTATION AND ENERGY SERVICES INC. and RODAN TRANSPORT USA LTD,** | § § § § | |
| **Defendants.** | § | |

## DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................1

II.    COUNTER STATEMENT OF FACTS ...............................................2

    A.    Rodan's Operations.....................................................................2

        i.    Company Background .............................................2

        ii.    Field Supervisor/Truck Push Position ...................2

    B.    Job Duties of Plaintiff Randy Waltz and Opt-in Gary Solinger ............................3

        i.    FSTP Job Description ...............................................3

        ii.    Use of Pickup Trucks...............................................5

        iii.    Job Duties of Other FSTPs ......................................6

III.   ARGUMENT ........................................................................................6

    A.    Standard for Conditional Certification of an FLSA Collective Action .................6

    B.    Plaintiff fails to show he and other Rodan FSTPs are similarly situated...............8

        i.    FSTPs did not uniformly perform crucial job duties listed in the Job Description. ....................10

        ii.    The mere use of pickup trucks does not make all FSTPs similarly situated. ....................12

        iii.    Rodan's classification of FSTPs as exempt is not a basis for finding FSTPs are similarly situated....................14

        iv.    Plaintiff fails to demonstrate that other FSTPs who desire to join this lawsuit. ....................15

IV.    CONCLUSION.....................................................................................16

#5344558.3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atl. Indep. Union v. Sunoco, Inc.*,
  No. CIV.A.03-4389, 2004 WL 1368808 (E.D. Pa. June 16, 2004) ........................................13

*Babin v. Stantec, Inc.*,
  No. CIV.A 09-1160, 2010 WL 3363920 (E.D. Pa. Aug. 25, 2010) ....................................11

*Basco v. Wal–Mart Stores, Inc.*,
  No. 00–3284, 2004 WL 1497709 (E.D. La., Jul. 2, 2004).....................................................7, 8

*Bond v. Nat'l City Bank of Pennsylvania*,
  No. 05CV0681, 2006 WL 1744474 (W.D. Pa. June 22, 2006) ............................................16

*Bramble v. Wal-Mart Stores, Inc.*,
  No. CIV.A.09-4932, 2011 WL 1389510 (E.D. Pa. Apr. 12, 2011) ..........................7, 8, 11, 14

*Dybach v. Florida, Dep't of Corr.*
  942 F.2d 1562 (11th Cir. 1991) ...........................................................................................16

*Evancho v. Sanofi-Aventis U.S. Inc.*,
  No. CIV. A. 07-2266, 2007 WL 4546100 (D. N.J. Dec. 19, 2007).......................9, 10, 11, 15

*Federman v. Bank of Am., N.A.*,
  No. CV14441MASTJB, 2016 WL 3090631 (D. N.J. May 31, 2016) ......................................8

*Heng Guo Jin v. Han Sung Sikpoom Trading Corp.*,
  No. 13-CV-6789 CBA LB, 2015 WL 5567073 (E.D.N.Y. Sept. 21, 2015).....................13, 14

*McMaster v. E. Armored Servs., Inc.*,
  780 F.3d 167 (3d Cir. 2015)...........................................................................................10, 14

*Mike v. Safeco Ins. Co. of America*,
  274 F.Supp.2d 216 (D. Conn. 2003) ....................................................................................15

*In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*,
  No. 11-CV-3121, 2016 WL 1407743 (D. N.J. Apr. 11, 2016)......................................8, 9, 15

*Morgan v. Family Dollar Stores, Inc.*,
  551 F.3d 1233 (11th Cir. 2008) .............................................................................................8

*Reich v. Homier Distrib. Co., Inc.*,
  362 F.Supp.2d 1009 (N.D. Ind. 2005) ...................................................................................9

#5344558.3

*Shaffer v. M-I, LLC,*
   No. CV H-14-2966, 2015 WL 7313415 (S.D. Tex. Nov. 19, 2015) .......................................16

*Symczyk v. Genesis Healthcare Corp.*,
   656 F.3d 189 (3d Cir. 2011), *rev'd on other grounds,* 133 S. Ct. 1523 (2013)....................8, 9

*Villanueva-Bazaldua v. TruGreen Ltd. Partners*,
   479 F. Supp. 2d 411 (D. Del. 2007)..................................................................................16

*Zavala v. Wal Mart Stores Inc.*,
   691 F.3d 527 (3d Cir. 2012)...............................................................................................8

**Statutes**

Corrections Act ...........................................................................................9, 10, 13, 14

Fair Labor Standards Act.....................................................1, 7, 8, 9, 11, 12, 14, 15

Motor Carrier Act ..............................................................7, 9, 10, 11, 12, 13, 15

Pennsylvania Minimum Wage Act ......................................................................1

**Rules**

Local Rule 7.8.....................................................................................................2

**Regulations**

29 C.F.R. § 541.700 .........................................................................................12

29 C.F.R. § 782.2 ...............................................................................................9

29 C.F.R. § 782.5 .........................................................................................9, 12

29 C.F.R. § 785.35 ...........................................................................................13

#5344558.3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RANDY WALTZ, on behalf of himself and similarly situated employees, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:16-cv-00469 |
| AVEDA TRANSPORTATION AND ENERGY SERVICES INC. and RODAN TRANSPORT USA LTD, | § § § § | |
| Defendants. | § | |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION**

In Opposition to Plaintiff's Motion for Conditional Certification, Defendants Aveda Transportation and Energy Services Inc. ("Aveda")[1] and Rodan Transport USA Ltd ("Rodan" or "Defendant") would show the Court the following:

## I.     INTRODUCTION

Plaintiff initiated this lawsuit on March 17, 2016, seeking alleged unpaid overtime under the Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act ("PMWA") . On April 15, 2016, Gary Solinger filed a consent seeking to opt-in to this lawsuit. *See* Doc. No. 5. On October 31, 2016, Plaintiff filed his Motion seeking to conditionally certify a collective action on behalf of 36 individuals employed by Rodan in the position of Field Supervisor/Truck Push ("FSTP"). *See* Doc. No. 30-31.

---

[1] Aveda has been improperly named in this lawsuit.  Aveda has no employees in the United States, and neither Plaintiff Randy Waltz nor Gary Solinger were employed by Aveda, Inc. at any time relevant to their claims in this lawsuit.

Plaintiff's Motion relies on superficial commonalities between FSTPs while ignoring clear evidence of significant differences in the relevant duties of various FSTPs. The parties have taken three depositions and exchanged numerous documents to date. This testimony and evidence overwhelmingly demonstrates FSTPs are not similarly situated, and accordingly, conditional certification should be denied.[2]

## II.     COUNTER STATEMENT OF FACTS

### A.     Rodan's Operations

#### i.     Company Background

Rodan provides rig moving and transportation services for customer well sites. (Clark Depo. 17:3-13). Teams of Rodan employees travel to a customer's well site, disassemble a drilling rig at the site, transport the rig to a new location, and then reassemble the drilling rig at the new location where the customer can then recommence operations. (Clark Depo. 17:3-13). Rodan has operated out of numerous terminals throughout the United States, including terminals located in North Dakota, Texas, Oklahoma, Pennsylvania, and West Virginia. (Clark Depo. 13:14-14:6). The terminals function as a home base for areas in which Rodan conducts moving operations. (Clark Depo. 13:9-13).

#### ii.     Field Supervisor/Truck Push Position

FSTPs supervise rig moves and manage every employee on location. (Clark Depo. 30:5-11). An FSTP is ultimately responsible for ensuring that each rig move is performed in a safe and efficient manner. (Clark Depo. 30:5-11).

---

[2] The following facts are based on the deposition testimony of Timothy Clark at Ex. A ("Clark Depo."), Gary Solinger at Ex. B ("Solinger Depo."), and Randy Waltz at Ex. C ("Bush Depo."), and the Declaration of Brad Link at Ex. D ("Link Decl.") and, solely for the purposes of this Opposition, are deemed to be true. Copies of the cited portions of the deposition transcripts and declaration are filed simultaneously with this brief.

In April 2014, Rodan developed a written job description for the FSTP position ("Job Description"). (Clark Depo. 69:5-70:14, Exhibit 2). The Job Description was crafted at the corporate level, and was intended to apply at all of Rodan's terminals. (Clark Depo. 70:24-71:11). Although the Job Description provides that the FSTP job is salaried, some FSTPs were paid on a day-rate basis even after the implementation of the Job Description. (Clark Depo. 71:12-72:24). Indeed, efforts to move FSTPs to salary were met with stiff resistance by the FSTPs. (Clark Depo. 73:14-74:1). The FSTPs were receiving enormous amounts of money while being paid on a day-rate basis (in some instances more than $300,000 per year), and several FSTPs threatened to quit if they were paid on a salary basis. (Clark Depo. 73:14-74:1).

Most of the FSTPs drove pickup trucks on a daily basis, but driving company pickup trucks was not an actual FSTP job duty and was not even referenced in the Job Description. (Clark Depo. 52:22-53:5, *see* Clark Depo. Exhibit 2). Although most FSTPs were assigned a company pickup truck, each terminal manager decided whether to assign pickup trucks, and in some instances, FSTPs used their own vehicles rather than company vehicles. (Clark Depo. 53:24-55:22).

**B.      Job Duties of Plaintiff Randy Waltz and Opt-in Gary Solinger**

Both named Plaintiff Randy Waltz ("Waltz") and Opt-In Gary Solinger ("Solinger") worked as Rodan FSTPs. Waltz worked as an FSTP from May 2014 to May 2015 and was stationed out of Rodan's Cogan Station, Pennsylvania terminal. (Waltz Depo 20:5-13, 21:5-8, 26:12-18). Solinger worked both as a Driver and as an FSTP for Rodan from October 2012 to January 2016 and was stationed out of the Midland, Texas terminal. (Solinger Depo. 22:5-22).

**i.      FSTP Job Description**

Both Waltz and Solinger had never seen the Job Description before their depositions. (Solinger Depo. 40:13-25; Waltz Depo. 41:11-16). Waltz and Solinger gave conflicting

testimony regarding the accuracy of the Job Description as it pertains to their actual day-to-day duties. First, the Job Description states that one of the major duties and responsibilities of FSTPs is to supervise Crane/Picker Operators, Rigger Operators, and Drivers at the well sites (*See* Clark Deposition, Exhibit 2). The Crane/Picker and Rigger Operators used heavy machinery to dismantle and load rig equipment onto large hauling trucks ("Haulers") prior to the transport of the rigging equipment to a new well site. (Waltz Depo. 49:3-8). Waltz testified he did nothing more than ensure these Operators were wearing protective clothing, and was not responsible for the Operators' securing the rig loads. (Waltz Depo. 50:10-51:14). Specifically, Waltz stated "[w]hen it came to cranes and pickers, they made their decisions", and claimed he was not their acting supervisor. (Waltz Depo. 50:10-51:14). Waltz testified that the Drivers had the "final say" on the load securement process at his well sites, and he merely assigned certain loads to Drivers. (Waltz Depo. 46:18-49:2, 311:12-25). In contrast, Solinger testified he supervised the Crane Operators, specifically instructing them on loading equipment. (Solinger Depo. 42:1-43:12). Further, unlike Waltz, Solinger stated:

> Well, I pretty much was making sure they're [the Rigger Operators] doing their jobs, you know, picking up loads and stuff, making sure they're hooking the rigging up correct. And usually at this time I'm usually working right with them. I'm right there usually with them.
> …
> You know, when they [the Crane Operators] start picking up on the load, I'm there guiding them up, you know, telling them to come up or down, whatever, to set the load off, get it out of the way, put it on a truck or just in general out of the way.

(Solinger Depo. 42:3-9, 43:8-12). In addition, Solinger testified he supervised Drivers, who also engaged in loading rig equipment at the well sites. (Solinger Depo. 41:11-25, 82:11-83:11). Solinger instructed the Drivers on what  pieces of equipment to pick up and load or unload, and

ensured the Drivers were "properly chaining their loads down and … call[ed] in for permits." (Solinger Depo. 41:11-25).

Second, the Job Description states that a major FSTP duty is to ensure that all loads comply with government safety and transportation standards and regulations. (*See* Clark Deposition, Exhibit 2). Waltz testified he did not ensure that loads complied with government and safety transportation standards; he merely ensured that Company policies and procedures were followed. (Waltz Depo. 71:13-72:7). When questioned as to why this job duty was listed in the Job Description, Waltz stated "as I testified, I never saw that [the Job Description]." (Waltz Depo. 72:8-11). In contrast, Solinger testified that he did ensure that loads complied with government safety and transportation standards. (Solinger Depo. 66:14-69:10). Indeed, Solinger took great pains to ensure the loading was done correctly, in line with Department of Transportation measurements, and exercised independent judgment both before and during the loading process to ensure the safety of the load. (Solinger Depo. 66:14-69:10).

Brad Link ("Link"), the Terminal Manager of the Midland Texas terminal, also never saw the Job Description prior to this lawsuit. (Link Decl. ¶ 3). Link relied on the individual judgment and discretion of FSTPs to deal with issues that arise on a rig site, rather than any particular written policies or procedures. *Id.*

## ii.    Use of Pickup Trucks

Both Waltz and Solinger used pickup trucks to travel to and from well sites at the beginning and end of each workday, sometimes carrying other crew members with them. (Solinger Depo. 311:9-312:5; 314:22-316:24; 323:19-325:25; Waltz Depo. 318:19-319:25; 342:2-10; 343:7-344:21). Waltz and Solinger also performed route assessments with pickup trucks prior to Haulers transporting rig equipment to a new well site. (Solinger Depo. 319:8-15; Waltz Depo. 323:2-324:4). However, they differed greatly in their use of pickup trucks to

transport equipment. While Waltz claims that he transported equipment "all the time" in his pickup, Solinger "very rarely" transported equipment in his pickup truck. (Waltz Depo. 321:17-322:6; Solinger Depo. 312:6-15).

According to Terminal Manager Link, whether FSTPs used pickup trucks to transport equipment and crew members depended on the particular needs of a job. (Link Decl. ¶ 4). Sometimes FSTPs hauled crew and equipment, and sometimes they did not. *Id.* This varied greatly depending on the particular job worked each week. *Id.*

According to Link, some FSTPs also work as Drivers and Safety Advisors, in addition to working as FSTPs. (Link Decl. ¶ 5-6). The Driver and Safety Advisor positions had their own specific duties. *See id.* Drivers operated Haulers, which are well in excess of 10,000 pounds, and did not drive pickup trucks. (Link Decl. ¶ 5).

### iii.    Job Duties of Other FSTPs

Waltz testified he does not actually know what other FSTPs were doing during each work day, and "wouldn't know" whether other FSTPs drove the Haulers in Texas.   (Waltz Depo. 260:23-261:8, 387:18-388:4). Likewise, Solinger testified he has "no idea" whether Waltz performed different job duties, and does not know what Waltz did on a day-to-day basis. (Solinger Depo. 249:21-250:15). Solinger admitted that each FSTP does things differently. (Solinger Depo. 251:5-9).

## III.    ARGUMENT

### A.    Standard for Conditional Certification of an FLSA Collective Action

In this case, Waltz contends that a collective action is appropriate for a class of FSTPs who were paid on a day-rate basis. According to Waltz, each such FSTP was similarly situated,

performing duties outlined in the Job Description and were excluded from the Motor Carrier Act exemption.[3]

Proceeding collectively is appropriate when collective treatment will benefit the judicial system through the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Bramble v. Wal-Mart Stores, Inc.,* No. CIV.A.09-4932, 2011 WL 1389510, at *3 (E.D. Pa. Apr. 12, 2011) (internal citations omitted). However, "[t]he right to proceed collectively may be foreclosed where 'an action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.'" *Id.* at *4 (quoting *Basco v. Wal–Mart Stores, Inc.,* No. 00–3284, 2004 WL 1497709 (E.D. La., Jul. 2, 2004) (further citations omitted). The Third Circuit has adopted a two-step standard for certifying FLSA collective actions:

> In deciding whether a suit brought under § 216(b) may move forward as a collective action, courts typically employ a two-tiered analysis. During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff. If the plaintiff carries her burden at this threshold stage, the court will "conditionally certify" the collective action for the purposes of notice and pretrial discovery....
>
> After discovery, and with the benefit of "a much thicker record than it had at the notice stage," a court following [this] approach then makes a conclusive determination as to whether each plaintiff who has opted into the collective action is in fact similarly situated to the named plaintiff. *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1261 (11th Cir. 2008). "This second stage is less lenient, and the plaintiff bears a heavier burden." *Id.* Should the plaintiff satisfy her burden at this stage, the case may proceed to trial as a collective action.

*Federman v. Bank of Am., N.A.,* No. CV14441MASTJB, 2016 WL 3090631, at *2–3 (D. N.J. May 31, 2016) (citing *Symczyk v. Genesis Healthcare Corp.,* 656 F.3d 189, 192-93 (3d Cir. 2011), *rev'd on other grounds,* 133 S. Ct. 1523 (2013)).

---

[3] Notably, Waltz himself actually admitted he does not know what, if any, Rodan policy constitutes the actual basis for his collective claim against Rodan. (Waltz Depo. 265:21-266:4).

In this instance, Plaintiff's Motion arises under the first step. At this stage the Court "determine[s] whether the proposed collective consists of similarly situated employees to whom notice of the collective action should be sent." *Bramble,* 2011 WL 1389510, at *4. Plaintiff bears the burden of showing that the employees in the class are "similarly situated." *Zavala v. Wal Mart Stores Inc.,* 691 F.3d 527, 537 (3d Cir. 2012).

Importantly, "the mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members [] 'similarly situated' for § 216(b) purposes." *Bramble,* 2011 WL 1389510, at *4 (internal citations omitted). A collective action is foreclosed when "an action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Id.* (citing *Basco,* 2004 WL 1497709) (further citations omitted).

Following multiple depositions and the production of documents, "[p]laintiffs cannot avoid th[e] record simply by noting that the requirements for conditional certification are fairly lenient." *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.,* No. 11-CV-3121, 2016 WL 1407743, at *8 (D. N.J. Apr. 11, 2016). Conditional certification is available "only where the plaintiff is able to 'produce some evidence beyond pure speculation of a factual nexus between the manner in which the employer's alleged policy affected h[im] and the manner in which it affected other employees.'" *Id.* (quoting *Symczyk,* 656 F.3d at 193) (further citations omitted).

## B.     Plaintiff fails to show he and other Rodan FSTPs are similarly situated.

Potential misclassified collective action members are not "similarly situated" when their exempt status may differ depending on their job responsibilities and duties. *Evancho v. Sanofi-Aventis U.S. Inc.,* No. CIV. A. 07-2266, 2007 WL 4546100, at *3 (D. N.J. Dec. 19, 2007) (citing

*Reich v. Homier Distrib. Co., Inc.,* 362 F.Supp.2d 1009, 1013-15 (N.D. Ind. 2005) (denying motion for conditional certification when potential collective action members were not similarly situated, because application of FLSA exemption would depend on each employee's specific duties) (further citations omitted).

While the merits of a dispute are not normally at issue at this stage, based on Plaintiff's own contentions, the issue presented for satisfying the first stage of the collective action standard is whether FSTPs paid on a day-rate basis are exempt from FLSA overtime provisions under the Motor Carrier Act. *See* Plaintiff's Motion at 18-19. To fall within the Motor Carrier Act exemption, an employee must "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce…" 29 C.F.R. § 782.2(a). An employee who supervises and directs the loading of a motor vehicle affects the "safety of operation of motor vehicles" and may be exempt under the Act. 29 C.F.R. § 782.5(a)-(b). However, employees exempt under the Motor Carrier Act may still be entitled to overtime due to an exception found in the Corrections Act for "covered employees" who operate vehicles weighing less than 10,000 pounds. *See McMaster v. E. Armored Servs., Inc.,* 780 F.3d 167, 169 (3d Cir. 2015). Under the Corrections Act the term "covered employee" includes an individual:

> (1) who is employed by a motor carrier or motor private carrier (as such terms are
> defined by section 13102 of title 49, United States Code, as amended by section
> 305);
> (2) whose work, in whole or in part, is defined—
>     (A) as that of a driver, driver's helper, loader, or mechanic; and
>     (B) as affecting the safety of operation of motor vehicles weighing 10,000
> pounds or less in transportation on public highways in **interstate or foreign
> commerce** … and
> (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

SAFETEA–LU Technical Corrections Act of 2008, PL 110–244, June 6, 2008, 122 Stat 1572 (emphasis added).

As explained below, Plaintiff fails to demonstrate that he and other FSTPs are similarly situated. The individualized job duties of FSTPs weigh against conditional certification. Waltz and Solinger admittedly performed the job duties listed in their Job Description differently – particularly those duties that relate to the Motor Carrier Act exemption and the exception under the Corrections Act.

### i.      FSTPs did not uniformly perform crucial job duties listed in the Job Description.

Employees are not similarly situated when they share the same job title and job description but perform job duties in an individualized manner inconsistent with the Job Description. For example, in *Evancho,* some pharmaceutical sales representatives were required to closely adhere to written materials provided to all employees in the course of their job duties. 2007 WL 4546100, at *4. However, evidence submitted by defendants demonstrated that other sales representatives did not closely adhere to these written materials in the course of their job duties. *Id.* Given the conflicting evidence, the court denied conditional certification. Specifically, the court found that despite a common set of applicable written materials that applied to the employees the "differences between various [employees'] descriptions of their job responsibilities and duties show[ed] that status under the FLSA may vary among plaintiffs and potential collective action members." *Id.* (internal citations omitted). Similarly, in *Bramble,* the Eastern District of Pennsylvania denied conditional certification, reasoning:

> [a]lthough plaintiffs and the putative opt-ins share the same job title and essentially the same job description, an analysis of plaintiffs' claim that [the employees] are misclassified as exempt would require an individualized inquiry as to whether the tasks in fact performed by each putative collective action member are or were similar to the tasks that plaintiffs claim they performed and which render them more appropriately classified as non-exempt employees.

2011 WL 1389510, at *8. *See also Babin v. Stantec, Inc.,* No. CIV.A 09-1160, 2010 WL 3363920, at *4 (E.D. Pa. Aug. 25, 2010) (denying conditional certification for a class of designers, and finding that "while [the] designers may share certain general job functions— including preparing or reviewing project designs, drawings, calculations, and documentation— that alone is insufficient to establish that designers are similarly situated. Rather, determining whether an employee is properly classified as overtime-exempt … requires identifying the employee's 'primary duty'—not just the employee's generalized job functions…").

Here, the undisputed evidence demonstrates that FSTPs performed their relevant job duties differently despite a common Job Description. Solinger testified that the Job Description concerning loading activities accurately described the tasks he performed as an FSTP, while Waltz testified the Job Description was wholly inaccurate regarding his involvement in loading activities. (Solinger Depo. 41:11-25, 42:1-43:12, 66:14-69:10, 82:11-83:11; Waltz Depo. 46:18-49:2, 50:10-51:14, 71:13-72:11, 311:12-25). Significantly, the tasks performed by FSTPs in loading motor vehicles has a direct bearing on whether the FSTPs are exempt under the Motor Carrier Act. *See* C.F.R. § 782.5(a)-(b). Accordingly, the differences between Waltz and Solinger regarding these job duties goes to the heart of whether FSTPs are exempt.[4]

Waltz superficially asserts he and Solinger performed the "exact same job duties" rigging up and rigging down, and that the Job Description applies to all FSTPs regardless of location.

---

[4] Even if Waltz and Solinger performed crucial job duties similarly (which they do not), it is noteworthy that Solinger, unlike Waltz, worked for Rodan as both an FSTP *and* a Driver. (Solinger Depo. 22:5-22; Waltz Depo. 20:8-13). Accordingly, unlike Waltz, with respect to Solinger, the Court will need to evaluate his duties as an FSTP and as a Driver to determine whether he is entitled.  Plaintiff cannot claim Solinger's work as a Driver is not relevant to this lawsuit – exemptions to the FLSA are generally measured by an employee's job as a whole, not in a piecemeal manner that seeks overtime only for certain non-exempt duties or positions. *See* 29 C.F.R. § 541.700. Moreover, in the Midland Terminal, some FSTPs also work as Drivers and Safety Advisors. (Link Decl. ¶ 5-6).

Plaintiff's Motion at 17. This argument fails due to clear evidence that Waltz and Solinger, in fact, performed crucial Job Description duties differently. Further, when questioned on why he did not perform some of the job duties listed in the Job Description, Waltz simply retorted "as I testified, I never saw that [the Job Description]." (Waltz Depo. 72:8-11). Additionally, Solinger worked for Rodan as an FSTP from October 2012 to January 2016, and the Job Description was not even created until April 2014, a full year and a half into Solinger's tenure at Rodan. (Solinger Depo. 22:5-22; Clark Depo. 69:5-70:14, Exhibit 2).

Finally, both Waltz and Solinger affirmed they do not know whether other FSTPs perform the same job duties. Waltz testified he does not actually know what other FSTPs do during each workday, and "wouldn't know" whether other FSTPs operate Haulers. (Waltz Depo. 260:23-261:8, 387:18-388:4). Likewise, Solinger testified he has "no idea" whether Waltz performed any different job duties, and that all FSTPs do things differently. (Solinger Depo. 249:21-250:15, 251:5-9).

###### ii.     The mere use of pickup trucks does not make all FSTPs similarly situated.

To the extent they drove them, FSTPs utilized pickup trucks differently in important ways. Waltz must show FSTPs actually utilized pickup trucks in "*interstate* or foreign *commerce*" within the meaning of the Corrections Act. See Corrections Act §306(c)(2)(B) (emphasis added). Indeed, FSTPs must actually transport passengers or property from one state to another in a vehicle weighing 10,000 pounds or less to be eligible for overtime for a particular workweek. *See Heng Guo Jin v. Han Sung Sikpoom Trading Corp.,* No. 13-CV-6789 CBA LB, 2015 WL 5567073, at *6 (E.D.N.Y. Sept. 21, 2015) ("[U]nder the Corrections Act, drivers who *transport goods* in both small and large vehicles are subject to the FLSA's overtime provisions.") (emphasis added); *Atl. Indep. Union v. Sunoco, Inc.,* No. CIV.A.03-4389, 2004 WL 1368808, at *4 (E.D. Pa. June 16, 2004). (noting that under the Motor Carrier Act interstate activity involves

"[e]mployees who operate vehicles in interstate activities that require them to *transport property essential to their job duties*.") (emphasis added).

Waltz testified he transported equipment "all the time" in his pickup truck, while Solinger testified he "very rarely" transported equipment in his pickup truck. (Waltz Depo. 321:17-322:6; Solinger Depo. 312:6-15).[5] In addition, Clark testified that while it was typical to assign FSTPs a company pickup truck, each terminal manager ran his own terminal, and in some instances FSTPs drove their own vehicles instead of a company vehicle. (Clark Depo. 53:24-55:22). Moreover, according to Link, the use of pickup trucks for the transport of equipment and crew varied greatly depending on the particular job an FSTP worked on each week. (Link Decl. ¶ 4). Additionally, some FSTPs work as Drivers, which does not entail driving pickup trucks. (Link Decl. ¶ 5).

Even if FSTPs are entitled to overtime under the exception in the Corrections Act, they will only be entitled to overtime for those specific workweeks in which pickup trucks were actually used in interstate commerce. The small-vehicle exception contained in the Corrections Act only entitles employees to overtime for the particular workweeks that the employee fits within the Corrections Act exception. *See Heng Guo Jin.,* 2015 WL 5567073, at *7 (citing U.S. Dep't of Labor, Wage & Hour Div., Field Assistance Bulletin No. 2010–2, at *2–3, interpreting

---

[5] While Waltz and Solinger both testified to: (i) performing route checks; and (ii) driving to work at the beginning and end of the workday in pickup trucks, this general use of pickup trucks is not determinative of whether FSTPs are entitled to overtime under the Corrections Act. Watlz and Solinger do not represent they were performing the route checks for the purpose of transporting persons or property across state lines (i.e. commerce); instead, they were merely driving routes to check the safety condition of roads. (*See* Solinger Depo. 319:8-1; Waltz Depo. 323:2-324:4). Further, normal travel at the beginning and end of each workday, even to different worksites, is not compensable worktime. *See* 29 C.F.R. § 785.35.

Corrections Act to apply FLSA overtime-wage protections to drivers during *workweeks* in which they in part operate small vehicles) (emphasis added).[6]

Conditional certification is inappropriate where the Court will need to determine the applicability of the Corrections Act exception on a *week-by-week* basis for *each* FSTP. The Court will be required to determine whether each individual FSTP engaged in sufficient interstate commerce with a pickup truck in a particular workweek to be entitled to overtime for that workweek. This type of individualized inquiry precludes a finding that the class is similarly situated. Moreover, this week-by-week analysis for each FSTP precludes judicial efficiency in a collective action. *See Bramble,* 2011 WL 1389510, at *8.

### iii. Rodan's classification of FSTPs as exempt is not a basis for finding FSTPs are similarly situated.

Plaintiff asserts, without support, that the mere classification of FSTPs as exempt under the Motor Carrier Act and Highly Compensated Employee exemptions supports certification. *See* Plaintiff's Motion at 17-20. In *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.,* the Plaintiffs unsuccessfully raised this precise argument, contending "that they ha[d] met th[e] fairly lenient standard simply because [the employer] ha[d] a uniform policy of treating all [employees] as exempt under the FLSA." 2016 WL 1407743, at *8. The court, however, reasoned that "in light of the substantial evidence on the record, it [was] apparent that those policies affect[ed] different employees in vastly different ways." *Id.* (citing *Mike v. Safeco Ins. Co. of America,* 274 F.Supp.2d 216, 221 (D. Conn. 2003) (allegations of a uniform classification policy is not by itself sufficient to warrant conditional certification). Accordingly, the court

---

[6] In *McMaster,* the Third Circuit did not address whether an employee is entitled overtime only for those workweeks in which the employee engaged in interstate commerce with a small vehicle because the issue had not been raised. 780 F.3d at 169 n. 1. Because the merits of this issue need not be decided at this stage, it is sufficient to note Defendant will raise the legitimate defense that use of a pickup truck must be evaluated on a week-by-week basis.

found that "any argument that a factual nexus exists between [the employees] would be based on nothing more than rank speculation." *Id. See also Evancho,* 2007 WL 4546100.

Likewise, in this case, the mere fact that Rodan classified the FSTP position as exempt hardly forms a basis for conditional certification. This is particularly true when Rodan's policies affected FSTPs in vastly different ways. *See* Section III(B)(i)-(ii).

Further, Plaintiff ignores the evidence demonstrating Rodan's employees are not similarly situated by glibly asserting that all the employees were paid on a day-rate basis. *See* Plaintiff's Motion at 17-20. A company's decision to pay employees on day-rate basis without overtime based on the exempt status of employees, standing alone, is not be a basis for conditional certification. *See In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.,* 2016 WL 1407743, at *8.

### iv. Plaintiff fails to demonstrate that other FSTPs who desire to join this lawsuit.

District courts throughout the country have held that a Plaintiff must demonstrate that other employees within a proposed class desire to join a lawsuit prior to conditional certification. In *Dybach v. Florida, Dep't of Corr.* 942 F.2d 1562, 1567–68 (11th Cir. 1991), the Eleventh Circuit found that "[b]efore determining to exercise [its] power [to approve notice to potential plaintiffs], the district court should satisfy itself that there are other employees ... who desire to 'opt-in' and who are 'similarly situated' ...." While the *Dybach* standard is not binding precedent within the Third Circuit, numerous courts within this Circuit have cited *Dybach,* specifically noting a district court should be satisfied there are other employees who desire to opt-in. *See e.g. Villanueva-Bazaldua v. TruGreen Ltd. Partners,* 479 F. Supp. 2d 411, 416 (D. Del. 2007) (citing to *Dybach* and stating "[b]efore determining to exercise [its] power [to approve notice to potential plaintiffs], the district court should satisfy itself that there are other employees ... who

desire to 'opt-in' and who are 'similarly situated' ...."); *Bond v. Nat'l City Bank of Pennsylvania,* No. 05CV0681, 2006 WL 1744474, at *6 (W.D. Pa. June 22, 2006) (same).

Here, Waltz testified he has only spoken to two other FSTPs about joining this lawsuit. (Waltz Depo. 9:21-10:13). Both FSTPs indicated they were not sure they wanted to opt-in. (Waltz Depo 10:14-11:17). Waltz presents no further evidence of additional FSTPs who have a desire to join this lawsuit. Further, the fact that this case currently consists of merely one named-plaintiff and one opt-in underscores that there is insufficient evidence of other similarly situated individuals who desire to join this lawsuit. *See Shaffer v. M-I, LLC,* No. CV H-14-2966, 2015 WL 7313415, at *4 (S.D. Tex. Nov. 19, 2015) (finding conditional certification was not warranted where only one opt-in consent had been filed with the court). Therefore, Waltz fails to demonstrate that there are a sufficient number of employees with a desire to join this lawsuit to merit conditional certification.

## IV.   CONCLUSION

The uncontroverted evidence demonstrates FSTPs are not similarly situated in terms of actual job duties performed on a day-to-day basis. Plaintiff fails to demonstrate a factual nexus between any of Rodan's policies and the manner in which the policies affect Plaintiff and other FSTPs. Accordingly, Defendant respectfully asks the Court to deny the Motion and refuse to conditionally certify the proposed class and facilitate notice.

Respectfully submitted,

BRACEWELL LLP


*/s/Robert E. Sheeder*
Robert E. Sheeder, attorney-in-charge
Texas Bar No. 18174300
Robert.sheeder@bracewelllaw.com
Clayton M. Davis
Texas Bar No. 24092323
Clayton.davis@bracewelllaw.com
1445 Ross Avenue, Suite 3800
Dallas, Texas 75202
Telephone:  (214) 758-1643
Facsimile: (214) 758-8340


**ATTORNEYS FOR DEFENDANTS**

OF COUNSEL:

Mark A. Fontana
PA ID No. 37602
Eckert Seamans Cherin & Mellott, LLC
213 Market Street, 8th Floor
Harrisburg, PA 17101
Telephone:  (717) 237-7183
Facsimile:  (717) 237-6019
MFontana@Eckertseamans.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November 2016, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

*/s/Robert E. Sheeder*

## CERTIFICATE OF WORD COUNT

I hereby certify, pursuant to Local Rule 7.8(b), that Defendants' Opposition to Plaintiff's Motion for Conditional Certification is less than 5,000 words. According to Microsoft Word count, the word count is 4,960 words.

*/s/Robert E. Sheeder*